[Cite as *Carr-Woodard v. Woodard*, 2016-Ohio-5134.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103283**

# CHERRY CARR-WOODARD

PLAINTIFF-APPELLEE/
CROSS-APPELLANT

vs.

# TROY WOODARD

DEFENDANT-APPELLEE

[Appeal By Edward R. Jansen]

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-13-348738

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 28, 2016

**ATTORNEY FOR APPELLANT**

Edward R. Jansen, pro se
Lavelle & Lavelle Co., L.P.A.
815 Superior Avenue, Suite 1825
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEES**

**For Cherry Carr-Woodard**

Scott S. Rosenthal
Schoonover, Rosenthal, Thurman & Daray, L.L.C.
1001 Lakeside Avenue, Suite 1720
Cleveland, Ohio 44114

**For Troy D. Woodard**

Elizabeth A. Dormann
Lori A Zocolo
Abel & Zocolo Co., L.P.A.
815 Superior Avenue, Suite 1915
Cleveland, Ohio 44114

EILEEN T. GALLAGHER, J.:

{¶1} Appellant, Edward R. Jansen ("Jansen"), appeals from a judgment awarding him $1,075.84 for additional guardian ad litem fees. He raises the following two assignments of error:

> 1. The trial court committed reversible error and abused its discretion when it failed to hold a hearing on the guardian ad litem's motion for additional guardian ad litem fees and made an award of guardian ad litem fees without any evidence being presented to the court.
>
> 2. The trial court abused its discretion and committed reversible error when it made an award of additional guardian ad litem fees.

{¶2} Plaintiff/cross-appellant, Cherry Carr-Woodard ("Cherry") also appeals from the trial court's judgment and raises the following five assignments of error:

> 1. The trial court erred and abused its discretion in failing to hold a hearing on Plaintiff/cross-appellant's motion to show cause and motion for attorney fees filed on February 23, 2015.
>
> 2. The trial court erred and abused its discretion in the allocation of the parties' debts.
>
> 3. The trial court erred and abused its discretion in allocation of the tax exemption for the child.
>
> 4. The trial court erred and abused its discretion by ignoring defendant/appellee's financial misconduct and by failing to include marital monies hidden in his mother's account by the division of accounts.
>
> 5. The trial court erred and abused its discretion in the failure to award plaintiff/cross-appellant's attorney fees.

{¶3} We find some merit to the appeal, reverse in part the trial court's judgment, and remand the case to the trial court to hold a hearing on the guardian ad litem fees, and to award Cherry additional attorney fees.

## I. Facts and Procedural History

{¶4} Cherry and defendant-appellee, Troy D. Woodard ("Troy"), were married in July 2009, and had one child born as issue of the marriage. The parties separated in April 2012, after police were called to the house for a domestic dispute. Cherry filed a complaint for divorce approximately one week after the separation.

{¶5} Jansen was appointed to serve as guardian ad litem for the minor child on May 21, 2013. Following 38 months of pretrial litigation, the case proceeded to trial in February 2014. The 12-day trial concluded on May 21, 2014. While the parties were awaiting the magistrate's decision, the guardian ad litem continued to work on the case and claims he incurred an additional 28.5 hours of fees.

{¶6} Before the magistrate issued her decision, Jansen filed a motion for additional guardian ad litem fees, explaining that he reviewed the parties' written final arguments, prepared his own written final argument, facilitated a holiday visitation schedule, and attended a meeting at the Goddard School to resolve a dispute between the parents regarding the child's attendance there. Jansen's itemized bill shows that he also reviewed several motions and numerous emails regarding continuing disagreements between the parties. In the motion for additional fees, Jansen asserted he had incurred an additional $3,562.50 in fees as of November 24, 2014.

{¶7} The magistrate issued a decision in January 2015 in which she divided the marital debts and assets, allocated parental rights, and ruled on Cherry's motion for attorney fees. However, the magistrate's decision did not make a ruling on the motion for additional guardian ad litem fees.

**{¶8}** Jansen and Cherry filed timely objections and supplemental objections to the magistrate's decision. Troy moved to dismiss Cherry and Jansen's objections, arguing they failed to file a trial transcript in violation of Civ.R. 53. However, because the record shows that Troy filed the trial transcript as the trial was proceeding, there was no cause for dismissal. The trial court adopted the magistrate's decision in part, and modified it in part.

**{¶9}** Cherry and Jansen now, separately, appeal the trial court's judgment.

**{¶10}** As a preliminary matter, Troy argues Cherry's appeal should be dismissed because she failed to file a praecipe or order a copy of the transcript from the June 26, 2015 proceedings. However, the record shows that Cherry filed a praecipe identifying the June 26, 2015 proceedings, and the transcript was filed on August 14, 2015. Therefore, we find no basis to dismiss Cherry's appeal.

## II. Law and Analysis

### A. Guardian Ad Litem Fees

**{¶11}** In Jansen's first assignment of error, he argues the trial court committed reversible error by failing to hold a hearing on his motion for additional guardian ad litem fees. In the second assignment of error, Jansen argues the trial court erred by awarding a portion of his requested fees in the absence of any evidence. We discuss these assigned errors together because they both relate to the propriety of the court's judgment awarding guardian ad litem fees without holding a hearing.

**{¶12}** We review an order to compensate a guardian ad litem for an abuse of discretion. *In re D.C.J.*, 8th Dist. Cuyahoga Nos. 97681 and 97776, 2012-Ohio-4154, ¶ 63, citing *Robbins v. Ginese*, 93 Ohio App.3d 370, 372, 638 N.E.2d 627 (8th Dist.1994).

**{¶13}** With respect to Jansen's motion for additional guardian ad litem fees, the trial court ruled:

> The Court finds that the total amount of GAL fees and expenses through the last day of trial is $17,424.16. * * * The court further finds that the GAL filed two (2) post trial motions, GAL's Motion for Additional Guardian Ad Litem Fees (Motion #370500, filed November 24, 2014) and GAL's Motion for Additional Guardian Ad Litem Bond to Submit Objections to the Magistrate's Decision (Motion # 372656, filed on January 29, 2015). The court finds that guardian[s] ad litems [sic] are routinely not compensated for every hour spent on a case and, in addition, as mentioned above, the GAL's objections are duplicative of Plaintiff's objections. The Court finds that the GAL's Motion for Additional Guardian Ad Litem Fees (Motion # 370500, filed on November 24, 2014) is granted, however, the Court does not award the amount requested by the GAL. The Court finds that an award in the amount of $1,075.84 is reasonable in the interest of judicial economy. * * *
>
> The Court finds a total amount of $18,500.00 is due to GAL Edward R. Jansen for GAL fees up to and including the date of journalization of this entry.

**{¶14}** Cuyahoga C.P. Loc.Dom.Rel.R. 35(E) governs the guardian ad litem's role in divorce cases, and provides that "[g]uardians ad litem shall be compensated at the rate of $125.00 per hour for all reasonable and necessary time expended." With respect to the amount of compensation, Cuyahoga C.P. Loc.Dom.Rel.R. 35(E) further provides, in relevant part: "Upon motion for guardian ad litem fees, the Court *shall conduct a hearing* to determine if the fee sought by the guardian ad litem is reasonable and necessary and to determine the amount each party shall contribute toward the fee." (Emphasis added.) Indeed, this court has held that a trial court abuses its discretion when it fails to hold a hearing to determine if the guardian ad litem fees are reasonable. *In re D.C.J.*, 8th Dist Cuyahoga Nos. 97681 and 97776, 2012-Ohio-4154, ¶ 67.

**{¶15}** Therefore, in accordance with Cuyahoga C.P. Loc.Dom.Rel.R. 35(E) and this court's precedent, we find the trial court abused its discretion in failing to hold a hearing on Jansen's motion for additional guardian ad litem fees. It may be that a portion of Jansen's objections to the magistrate's report were unnecessary because they were duplicative of Cherry's objections. Or, perhaps, other services provided were unnecessary for other reasons. But before the trial court can reduce the GAL's fee bill, it must afford the GAL an opportunity to address the court. *In re D.C.J.* at ¶ 67.

**{¶16}** Jansen's first and second assignments of error are sustained.

### B. Motion to Show Cause

**{¶17}** In Cherry's first assignment of error, she argues the trial court abused its discretion in failing to conduct a hearing on her motion to show cause and for attorney fees filed on February 23, 2015.

**{¶18}** In the motion to show cause, Cherry argued that Troy failed to comply with the magistrate's order to pay all expenses on the marital home, maintain Cherry's auto insurance, and list the marital home for sale. She asserted, by motion supported by affidavit, that Troy failed (1) to pay the gas and electric bills, (2) canceled the internet and phone service, (3) canceled the ADT security system, (4) canceled Cherry's auto insurance, and (5) refused to the list the marital home for sale. Troy was properly served with a copy of the motion as required by Cuyahoga C.P. Loc.Dom.Rel.R. 20.

**{¶19}** Cherry contends the court was required by law to hold a hearing on her motion. She cites C.P. Loc.Dom.Rel.R. 16(B), *Falzini v. Falzini*, 8th Dist. Cuyahoga No. 64568, 1993 Ohio App. LEXIS 6201 (Dec. 23, 1991), and *In re Tecco*, 8th Dist.

Cuyahoga No. 46382, 1983 Ohio App. LEXIS 15281 (Sept. 29, 1983), to support her argument. However, both *Falzini* and *In re Tecco* were based on a former version of C.P. Loc.Dom.Rel.R. 16(B) that mandated a hearing. The current version of the local rules provides no such mandate.

{¶20} Although Cherry requested attorney fees and sanctions, she did not ask for a hearing. "Ohio courts have consistently recognized that a trial court does not abuse its discretion in not conducting a hearing when the movant never requested one." *Morgan v. Morgan*, 8th Dist. Cuyahoga No. 102498, 2016-Ohio-104, ¶ 9, citing *Bagnola v. Bagnola*, 5th Dist. Stark No. 2004CA00151, 2004-Ohio-7286 (rejecting appellant's claim that the trial court abused its discretion in finding appellant in contempt without conducting an evidentiary hearing when "appellant failed to properly and specifically request" a hearing); *Barton v. Barton*, 10th Dist. Franklin No. 96APF11-1526, 1997 Ohio App. LEXIS 2429 (June 3, 1997), citing Civ.R. 7(B)(2) (recognizing that there was "no requirement that the trial court hold an oral hearing," especially since appellant "never requested any further 'hearing,' oral or otherwise").

{¶21} Cherry has not provided any legal authority to support her argument that the trial court was required to hold a hearing on her motion to show cause because the authorities she cites have been overruled by subsequent revisions to the local rules. App.R. 16(A)(7) places an affirmative duty on the appellant to provide reasoning in support of an assignment of error with "citations to the authorities, statutes, and parts of the record on which appellant relies." Without a properly supported argument, we

cannot say that the trial court abused its discretion by choosing not to hold a hearing on Cherry's motion to show cause.

**{¶22}** Cherry's first assignment of error is overruled.

### C. Allocation of the Parties' Debts

**{¶23}** In Cherry's second assignment of error, she argues the trial court misallocated the parties' marital debts contrary to the weight of the evidence. She also asserts that the court contradicted itself.

**{¶24}** Referring to the marital credit cards, the magistrate stated in her report:

> Any and all marital credit card debt incurred by the Parties was accomplished using the credit cards held solely in the name of Defendant/Troy. Neither party provided substantial testimony to adequately indicate to the Court the amount of debt from each credit card that represents the amount incurred jointly. Plaintiff/Cherry proposed that she not be made liable for any debt associated with these credit cards. Defendant/Troy similarly proposed that he shall assume as his own and indemnify and hold harmless Plaintiff/Cherry for any and all of the marital debts incurred with the credit cards.

These statements were not part of the court's order; they were "findings of fact."

**{¶25}** The controversy in this assigned error concerns two credit cards with outstanding balances (1) a Costco American Express, with a balance of $4868.00, and (2) a USAA American Express, with a balance of $12,181.00. The magistrate acknowledged in her decision that Troy and Cherry separately acquired credit card debts following their separation, and the court ordered they each be responsible for his or her own post-separation debt. However, the magistrate found that four credit cards, with outstanding balances, belonged to both parties and were included in the marital debts. In addition to the Costco American Express and USAA American Express debts, the parties

had outstanding balances on a Chase Southwest card in the amount of $18,080.30, and a Capital One card in the amount of $5,105.00

{¶26} Despite Cherry's arguments otherwise, the magistrate never assigned the entire amount of credit card debt to Troy. She noted in her report that he volunteered to assume the entire amount of the marital credit card debt, but nevertheless divided the debt equally.

{¶27} When dividing martial assets, the trial court must take into account marital debt and divide it equally. *Cross v. Cross*, 8th Dist. Cuyahoga No. 102627, 2015-Ohio-5255, ¶ 30. The trial court equally divided the credit card debt by assigning two credit card accounts to Troy and two credit card accounts to Cherry. The accounts assigned to each party were similar, though the larger total debt was assigned to Troy. Nevertheless, when viewed in the entire context of the division of the parties' marital assets and debts, the assignments were fair and equitable.

{¶28} The trial court was not required to assign the responsibility of all the marital credit card to Troy even if he volunteered to do so. The court had a duty to divide the marital assets and debts equally.

{¶29} Therefore, the court's decision to assign Cherry the responsibility for paying off two credit card balances was not an abuse of discretion.

{¶30} Cherry's second assignment of error is overruled.

### D. Tax Exemption

**{¶31}** In her third assignment of error, Cherry argues the trial court abused its discretion by awarding the tax dependency exemption for the minor child to Troy. She contends the exemption should have been awarded to her because she would have had greater tax savings, which would benefit the child.

**{¶32}** We review the trial court's award of a tax dependency exemption for an abuse of discretion. *Brownlee v. Brownlee*, 8th Dist. Cuyahoga Nos. 97037 and 97105, 2012-Ohio-1539, ¶ 35.

**{¶33}** R.C. 3119.82 governs the designation of the parent entitled to claim a tax dependency exemption. If the parties agree on which parent should claim the children as dependents for tax purposes, the court shall designate that parent as the parent who may claim the children. *Id.* Where, as here, the parties do not agree which parent is entitled to the tax deduction, R.C. 3119.82 provides that the nonresidential parent may claim the exemption "only if the court determines that this furthers the best interest of the children." In making this determination, R.C. 3119.82 directs the court to consider

> any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

**{¶34}** In this case, the court awarded the tax dependency exemption to Troy because the court ordered him to pay child support to Cherry. The court also found that the tax dependency exemption would afford Troy greater tax savings than Cherry due to his larger income. Cherry argues Troy earns too much income to benefit from the exemption, but fails to present any evidence or explanation, expert or otherwise, as to

how Troy's tax benefit would be phased out by his higher income. Although Cherry cites several sections of the federal tax code in their entirety, she does not identify any applicable language in any of the sections, nor does she explain how those code sections apply to the facts in this case. Therefore, we find no abuse of discretion.

{¶35} Cherry's third assignment of error is overruled.

## E. Financial Misconduct

{¶36} In her fourth assignment of error, Cherry argues the trial court failed to consider Troy's financial misconduct. She contends he concealed marital assets by depositing them into his mother's account.

{¶37} Cherry lists four transactions from Troy's mother's Fifth Third Bank account. In one of these transactions, Troy testified that he deposited $13,003.78 into his mother's account on February 26, 2013. However, he also testified that this amount was equal to the entire amount of proceeds he received from his auto insurance carrier after his car was totaled. The car was a premarital asset, and he deposited the funds in his mother's account to repay monies owed for wedding costs and a 2003 Cadillac. (Tr. 14, Volume 3.)

{¶38} Cherry also accuses Troy of committing Medicare and Social Security fraud. However, the only testimony regarding Medicare and Social Security related to his mother's disability and her personal accounts. They have nothing to do with Cherry's claim that Woodard concealed marital assets from her.

{¶39} Cherry also contends Woodard "laundered" money through his mother's bank accounts and used it to pay his attorneys. Although there was evidence that

Woodard paid his attorneys with funds in his mother's account, there is no evidence that he either laundered money or intentionally concealed any assets from Cherry.

**{¶40}** Finally, Cherry accuses Woodard of tax fraud because he failed to disclose rental income and expenses on his federal income tax return. However, the record shows this incident occurred in 2010, before the parties were even separated. Moreover, because it was a joint tax return, it was not kept secret from Cherry. As Troy explained, the parties merely had to amend their taxes to correct the error. There is no evidence that Woodard intentionally concealed the income from the IRS.

**{¶41}** Over Troy's objections, the magistrate allowed Cherry to question Troy regarding transactions listed in his mother's bank statements. However, Troy's mother was not a party to the case and did not testify at trial. Despite a thorough interrogation of Troy, the magistrate found no evidence of malfeasance, nor do we find any such evidence. Accusations of IRS, Medicare, and Social Security fraud are serious allegations that should not be made lightly, especially when there is no evidence to support them. The trial court properly determined that Troy committed no acts of financial misconduct.

**{¶42}** Accordingly, the fourth assignment of error is overruled.

### F. Attorney Fees

**{¶43}** In the fifth assignment of error, Cherry argues the trial court erred in failing to award her additional attorney fees.

**{¶44}** Cherry requested a total of $68,155.62 to cover the entire amount of her attorney fees and expenses. The court had previously ordered Troy to pay Cherry

$30,000 in fees and expenses. Therefore, Cherry requested an additional $38,155.62 to cover the remaining litigation fees and expenses. The trial court denied the request for additional fees.

**{¶45}** An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Kehoe v. Kehoe*, 8th Dist. Cuyahoga No. 99404, 2013-Ohio-4907, ¶ 18. Thus, our review of the award of attorney fees is limited to determining (1) whether the factual considerations upon which the award was based are supported by the manifest weight of the evidence, or (2) whether the domestic relations court abused its discretion. *Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 68.

**{¶46}** Pursuant to R.C. 3105.73(A), a court may award all or part of reasonable attorney fees and litigation expenses to either party if the court finds the award equitable. In determining whether such an award is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." *Gentile* at ¶ 69.

**{¶47}** The record shows that Troy made numerous filings, which either required formal or legal responses. Troy filed 38 motions in the month of January 2014 alone. The trial court found that Cherry's attorney fee bill in the amount of $64,252.25 was reasonable, in light of the excessive motion practice caused by Troy. Indeed, the trial court made the previous award of $30,000 in attorney fees on January 30, 2014. Cherry also incurred $3,903.37 in deposition costs, expert fees, transcripts, photocopying, and postage, thus bringing her total litigation expenses to $68,155.62.

**{¶48}** The trial court awarded Cherry half the marital assets and ordered Troy to pay spousal support in the amount of $3,500 per month for a term of 18 months. Thus, the court ordered Troy to pay a total of $63,000 in spousal support. As previously stated, Cherry incurred $38,155.62 in additional legal expenses above the $30,000 Troy had previously paid. The total amount of spousal support ($63,000) less the outstanding legal fees and expenses ($38,155.62) leaves Cherry with a total of $24,844.38 in spousal support.

**{¶49}** The evidence at trial established that Troy's income is $313,000.00 annually. Cherry's 2012 W-2 showed she earned $19,530.00 that year. This is an enormous disparity in incomes. "The purpose of spousal support is to mitigate the drastic and abrupt lifestyle changes occasioned upon either party by divorce." *Fletcher v. Fletcher*, 2d Dist. Montgomery No. 90-DR31, 1995 Ohio App. LEXIS 2744 (June 28, 1995). The factors set forth in R.C. 3105.18(C) are tailored with that purpose in mind. *Id.*

**{¶50}** Since the marriage lasted less than five years, the court's award of spousal support for a period of 18 months is reasonable. However, almost half of the support will be paid to Cherry's attorneys. Thus, the amount of spousal support Cherry will actually receive to assist her transition to a new lifestyle is not sufficient to achieve its purpose. Under these circumstances, we find the court's denial of additional attorney fees was inequitable and an abuse of discretion.

**{¶51}** Cherry's fifth assignment of error is sustained.

**{¶52}** Judgment affirmed in part and reversed in part. Case is remanded to the trial court for a hearing on guardian ad litem fees and to order payment of Cherry's additional attorney fees.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
SEAN C. GALLAGHER, J., CONCUR